JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

PENSION FUND FOR NURSING HOME AND HEALTH CARE EMPLOYEES ET AL.

### DEFENDANTS

SKYLINE HEALTH CARE LLC A/K/A SKYLINE HEALTH MANAGEMENT LLC D/B/A WILLOW TERRACE

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
SUSAN A. MURRAY, ESQUIRE, FREEDMAN & LORRY, P.C.
1601 MARKET STREET, SUITE 1500, PHILADELPHIA, PA 19103
SMURRAY@FREEDMANLORRY.COM (215) 931-2506

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ❏ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ❏ 2  U.S. Government Defendant | ❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                  *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ Pharmaceutical | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | | | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| | | | | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | ☒ 791 Employee Retirement Income Security Act | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ❏ 2 Removed from State Court | ❏ 3 Remanded from Appellate Court | ❏ 4 Reinstated or Reopened | ❏ 5 Transferred from Another District *(specify)* | ❏ 6 Multidistrict Litigation - Transfer | ❏ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 USC 1132 AND 1145

Brief description of cause:
Collection of contractually obligated contributions owed to the Pension Fund

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ❏ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____     DOCKET NUMBER _____

| | |
|---|---|
| DATE  04/22/2019 | SIGNATURE OF ATTORNEY OF RECORD  *Susan A. Murray*   SUSAN A. MURRAY, ESQUIRE |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: Pension Fund for Nursing Home and Health Care Employees, et al., 1319 Locust Street, Philadelphia, PA 19107

Address of Defendant: Skyline Health Care LLC a/k/a Skyline Health Management LLC d/b/a Willow Terrace, 505 Marlboro Road, Wood Ridge, NJ 07075

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/22/2019 _____  _____  53036

         *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
  *(Please specify):* ERISA

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Susan A. Murray , counsel of record *or* pro se plaintiff, do hereby certify:

- ☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

- ☑ Relief other than monetary damages is sought.

DATE: 04/22/2019 _____  _____  53036

         *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Pension Fund for Nursing Home and Health Care Employees, et al. | : | CIVIL ACTION |
| v. | : | |
| Skyline Health Care LLC a/k/a Skyline Health Management LLC d/b/a Willow Terrace | : : : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ✔

| | | |
|---|---|---|
| April 22, 2019 | Susan A. Murray, Esquire | |
| **Date** | **Attorney-at-law** | **Attorney for**  Plaintiffs |
| (215) 931-2506 | (215) 925-7516 | smurray@freedmanlorry.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENSION FUND FOR NURSING HOME | : | CIVIL ACTION |
| AND HEALTH CARE EMPLOYEES - | : | |
| PHILADELPHIA AND VICINITY  and | : | |
| LAVERNE DEVALIA, Executive Director | : | |
| 1319 Locust Street | : | |
| Philadelphia, PA 19107 | : | No. |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SKYLINE HEALTH CARE LLC a/k/a | : | |
| SKYLINE HEALTH MANAGEMENT LLC d/b/a | : | |
| WILLOW TERRACE | : | |
| 505 Marlboro Road | : | |
| Wood Ridge, NJ 07075 | : | |
| | : | |
| Defendants. | : | |

## C O M P L A I N T

Plaintiffs, by their undersigned counsel, complain about Defendants as follows:

## JURISDICTION

1. This Court has jurisdiction over the subject matter of this action under 29 U.S.C.

§§ 185(a), 1132 and 1145 and 28 U.S.C. §1367.

2. A copy of this Complaint has been served on the Secretary of Labor and

the Secretary of Treasury of the United States by certified mail.

## VENUE

3. Venue lies in the Eastern District of Pennsylvania under 29 U.S.C. §§ 185(a) or

1132(e)(2).

## PARTIES

4.     Plaintiff Pension Fund for Nursing Home and Health Care Employees –
Philadelphia and Vicinity ("Pension Fund"), is a trust fund established under 29 U.S.C. §
186(c)(5) and "multiemployer plan" and "employee benefit plan" within the meaning of 29
U.S.C. § 1002(37), (2) and (3).  The Pension Fund is administered within the Eastern District of
Pennsylvania.

5.     Plaintiff Laverne DeValia ("DeValia") is the Executive Director and fiduciary
with respect to the Pension Fund within the meaning of 29 U.S.C. § 1002 (21) with a business
address as listed in the caption.  She is authorized to bring this action on behalf of all Trustees of
the Pension Fund.

6.     Defendant Skyline Health Care, LLC d/b/a Willow Terrace ("Employer") is a
New Jersey limited liability corporation and is an employer in an industry affecting commerce
with the meaning of 29 U.S.C. § § 152 (2), (6) and (7), 1002(5), (11) and (12) with a business
office at 505 Marlboro Road, Wood Ridge, NJ 07075.  Skyline Health Care, LLC has a
headquarters office at 16 Skyline Terrace, Spring Valley, NY 10977.

## FACTS

7.     At all times relevant to this action, Employer, was party to a collective bargaining
agreement with the National Union of Hospital and Health Care Employees, AFSCME, AFL-
CIO, District 1199C ("Labor Contract").  A true and correct copy of the Labor Contract is hereto
attached as Exhibit 1.

8.     Employer also agreed to abide by the terms of the Declaration of Trust of the
Pension Fund as from time to time amended ("Trust Agreement") made between certain

Employer and employee representatives in an industry affecting interstate commerce to promote stable and peaceful labor relations.

9.   Under the Labor Contract or Trust Agreement, the Defendant agreed:

(a)   To make full and timely payments on a monthly basis to the Pension Fund;

(b)   To file monthly remittance reports with the Pension Fund detailing all employees or work for which contributions were required under the Labor Contract;

(c)   To produce, upon request by the Pension Fund, all books and records deemed necessary to conduct an audit of the corporate Defendant's records concerning its obligations to the Pension Fund; and

(d)   To pay interest and liquidated damages and all costs of litigation expended by the Pension Fund to collect any amounts due as a consequence of the Defendant's failure to comply with its contractual obligations.

10.   Employer fell behind in contribution payments and became delinquent for its March, April, May, June, July, and August 2017 contributions.   Employer and Employer's counsel expressed an interest in resolving the matter.  Fund Counsel drafted an agreement in the form of a Judgment Note ("Note") allowing for repayment of the March through August 2017 contributions through a payment plan starting on February 1, 2018 and ending on January 1, 2019.  The Note included outstanding contributions, interest at 4% and a conditional waiver of liquidated damages.  On January 19, 2018, Fund Counsel emailed the proposed Note to counsel for Employer, requesting execution upon agreement of terms.  Counsel for Employer did not reply.  On February 14, 2018, Fund Counsel emailed Counsel for Employer requesting execution of Note and payment.  Counsel for Employer did not reply.  On April 21, 2018, Fund Counsel

emailed Counsel for Employer requesting first three installments and executed Note and advising that action will be taken shortly if payments are not received. Counsel for Employer did not reply. The Pension Fund, DeValia, and Fund Counsel are of the understanding that Employer changed management on or about May 2018 when the Pennsylvania Department of Health ousted Skyline Health Care, LLC's management from Employer after it learned that the company could not fiscally operate its facilities. At this point, the contribution payments for March 2017, April 2017, May 2017, June 2017, September 2017, October 2017, November 2017, December 2017, January 2018, February 2018, March 2018, and April 2018 are still outstanding. A true and correct copy of the proposed Note is hereto attached as Exhibit 2. A printout of the Reading Eagle article, "Pennsylvania takes control of nine nursing homes, including one in Berks County," is attached as Exhibit 3.

**COUNT I**
**AUDIT**

11.     The allegations of Paragraph 1 through 10 are incorporated by reference as if fully restated.

12.     Employer are obligated to permit the Fund to audit the Employer' corporate records and to cooperate in determining the contributions due the Fund.

13.     The amount of contributions the Employer are required to pay to the Fund is based upon hours worked and wages paid to employees performing work covered by the Labor Contract.

14.     The Fund is without sufficient information or knowledge to plead the precise nature, extent and amount of the Employer' delinquency since the books, records and information necessary to determine this liability are in the exclusive possession, custody and control or knowledge of the Employer and the Employer has failed to submit records or the

required remittance reports for the period from March 2017 to the April 2018.  Plaintiffs are seeking an audit of the Employer from June 2016 to April 2018 due to the lack of contribution payments.

15.     Employer is required by the Labor Contract, Trust Agreements or applicable law to permit the Fund to audit its records and to cooperate in determining the contributions due the Fund.

16.     The Fund has no adequate remedy at law for the calculation of any damages suffered as a result of the breach itself requires an audit.

17.     All conditions precedent to equitable relief have been satisfied.

**WHEREFORE**, Plaintiffs ask that the Court:

(a)     Enjoin the Employer, its officers, agents, servants, employees, attorneys and all others in active concert or participation with it to permit an audit of all records under the actual or constructive control of the Employer and, in the absence of records, to cooperate in alternative methods for the determination of work for which contributions are due, and;

(b)     Grant such other or further relief, legal or equitable, as is just, necessary or appropriate.

## COUNT II
## CONTRIBUTIONS UNDER CONTRACT AFTER AUDIT

18.     The allegations of Paragraph 1 through 17 are incorporated by reference as if fully restated.

19.     On information and belief, the Employer have failed to make contributions to the Fund as required by its Labor Contract or Trust Agreements in a period not barred by any applicable statute of limitations or similar bar.

20.     On information and belief, the Fund have been damaged by the failure of the Employer to make contributions as required by their Labor Contracts or Trust Agreement.

**WHEREFORE**, Plaintiffs ask that the Court:

(a)     After an audit, enter judgment against the Defendant Employer in favor of the Fund for the amount of contributions found due and owing by an audit together with liquidated damages, interest and costs, including reasonable attorneys' fees incurred in this action or the collection and enforcement of any judgment, as provided in the Labor Contract or Trust Agreements.

(b)     Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

### COUNT III
### CONTRIBUTIONS UNDER ERISA AFTER AUDIT

21.     The allegations of Paragraph 1 through 20 are incorporated by reference as if fully restated.

22.     On information and belief, the Employer have failed to make contributions to the Fund in violation of 29 U.S.C. § 1145 in a period not barred by an applicable statute of limitations or similar bar.

23.     The Plaintiffs are without sufficient information or knowledge to plead the precise nature, extent and amount of the corporate Employer' delinquency since the books, records and information necessary to determine this liability are in the possession, control or knowledge of the Employer and the Employer failed to submit contribution reports for the period from March 2017 to the present.   Plaintiffs seek an audit for the period from June 2016 to the present due to the ongoing issue with late payment of contributions.

24.    On information and belief, the Fund have been damaged by the Employer violation of 29 U.S.C. §1145.

**WHEREFORE**, Plaintiffs ask that the Court:

(a)    After an audit, enter judgment against the Defendant Employer in favors of the Fund for contributions found due and owing by the audit, together with interest at the rate prescribed by 26 U.S.C. §6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the plan document or statute and reasonable attorneys' fees and costs incurred in this action and in connection with any proceedings to enforce or collect any judgment.

(b)    Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

Respectfully submitted,

FREEDMAN AND LORRY, P.C.

BY:    _____
        SUSAN A. MURRAY (ID NO. 53036)
        1601 Market Street, Suite 1500
        Philadelphia, PA 19103
        (215) 925-8400
Date:  April 22, 2019        Attorneys for Plaintiffs

# EXHIBIT 1

# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN

## RC OPERATOR, LLC d/b/a WILLOW TERRACE

### and

## NATIONAL UNION OF HOSPITAL AND

## HEALTH CARE EMPLOYEES, AFSCME,

## AFL-CIO AND ITS AFFILIATE

## DISTRICT 1199C

**May 1, 2016**

**through**

**April 30, 2021**

1

# TABLE OF CONTENTS

**ARTICLE**                                                       **PAGE**

AGREEMENT ------------------------------------------------------------------- 3
ARTICLE I: RECOGNITION ---------------------------------------------- 3
ARTICLE II: UNION SECURITY ------------------------------------------ 4
ARTICLE III: CHECK OFF ------------------------------------------------ 5
ARTICLE IV: NO DISCRIMINATION -------------------------------------- 8
ARTICLE V: UNION ACTIVITY-------------------------------------------- 8
ARTICLE VI: PROBATIONARY EMPLOYEES-------------------------------- 9
ARTICLE VII: SENIORITY ----------------------------------------------- 10
ARTICLE VIII: WAGES AND MINIMUMS------------------------------------ 12
ARTICLE IX: HOURS---------------------------------------------------- 13
ARTICLE X: OVERTIME------------------------------------------------- 14
ARTICLE XI: SHIFTS --------------------------------------------------- 15
ARTICLE XII: HOLIDAYS ----------------------------------------------- 15
ARTICLE XIII: VACATIONS --------------------------------------------- 16
ARTICLE XIV: SICK LEAVE--------------------------------------------- 18
ARTICLE XV: PAID LEAVE---------------------------------------------- 19
ARTICLE XVI: UNPAID LEAVE ----------------------------------------- 19
ARTICLE XVII: PAST PRACTICES --------------------------------------- 21
ARTICLE XVIII: BARGAINING UNIT WORK ------------------------------- 21
ARTICLE XIX: MISCELLANEOUS---------------------------------------- 22
ARTICLE XX: HEALTH AND WELFARE ---------------------------------- 24
ARTICLE XXI: PENSION FUND------------------------------------------ 24
ARTICLE XXII: HIRING------------------------------------------------- 26
ARTICLE XXIII: MANAGEMENT RIGHTS --------------------------------- 27
ARTICLE XXIV: DISCHARGE AND PENALTIES ---------------------------- 28
ARTICLE XXV: NO STRIKE OR LOCK-OUTS ---------------------------- 28
ARTICLE XXVI: GRIEVANCE PROCEDURES------------------------------- 29
ARTICLE XXVII: ARBITRATION ----------------------------------------- 30
ARTICLE XXVIII: HEALTH AND SAFETY---------------------------------- 32
ARTICLE XXIX: SEPARABILITY ----------------------------------------- 32
ARTICLE XXX: DURATION OF AGREEMENT ------------------------------ 33
EXHIBIT A: DUES CHECK OFF------------------------------------------- 34
EXHIBIT B: CONSCIENTIOUS OBJECTOR CHECK OFF AUTHORIZATION35
EXHIBIT C: CREDIT UNION CHECK-OFF----------------------------------- 36
EXHIBIT D: POLITICAL ACTION CHECK-OFF------------------------------- 37

## AGREEMENT

This AGREEMENT made and entered this first day of May, 2016, by and between, RC Operator LLC d/b/a Willow Terrace (hereinafter called the "Facility") and its successors and assigns the NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, AFSCME, AFL-CIO, and its affiliate, District 1199C, with its offices at 1319 Locust Street, Philadelphia, Pennsylvania 19107 (hereinafter referred to as the "Union"), acting herein on behalf of the Employees of the said institution, as hereinafter defined, now employed and hereinafter to be employed and collectively designated as the "Employees."

### WITNESSETH

WHEREAS, the Facility recognized the Union as the collective bargaining representative for the Employees covered by this Agreement as hereinafter provided, and

WHEREAS, it is the intent and purpose of the parties hereto that this Agreement promotes and improves the mutual interests of the residents of the Facility as well as of its Employees and to avoid interruptions and interference with services to patients and to set forth herein their agreement covering rates of pay, hours of work and conditions of employment

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

## ARTICLE I: RECOGNITION

Section 1.

(a) The Facility recognizes the Union as the sole and exclusive collective bargaining representative of all service and maintenance Employees, including CNAs, RCNAs, Unit Clerks, Recreation Aides, Activity Aides, Unit Clerks, Medical Supplies Clerks, Physical Therapy Assistants, Housekeeping and dietary employees and excluding all registered nurses, licensed practical nurses, professional Employees, guards, and supervisors;

(b) Also excluded from the aforesaid bargaining unit are supervisory employees, which includes LPN's, confidential, executive, and managerial Employees defined by the act; and

(c) A temporary Employee is one who is hired for a period of up to three (3) months and is so informed at the time of hire, and who is hired for a special project or to replace an Employee on leave or vacation. The said three (3) month period may be extended up to an additional three (3) months or for the length of maternity leave of the Employee being replaced, with the consent of the Union, which will not be unreasonably withheld; however, such Employee will become a member of the Union after the expiration of the initial three (3) month period.

3

(d) Part-time Employees who are regularly scheduled to work sixteen (16) or more hours each week shall be part of the bargaining unit.

Section 2.

It is agreed that this Contract will apply and continue in full force and effect at any location to which the Facility may move.

Section 3.

Whenever the word "Employee" is used in this Agreement, it will be deemed to mean the Employees in the bargaining unit covered by this Agreement, as defined in Article I, Section 1 hereof.

Section 4.

All part-time Employees covered by this Agreement will be eligible for wages and benefits provided in this Agreement. Such benefits will be pro-rated based on the part-time Employee's hours worked.

Section 5.

Work regularly and customarily performed by an Employee shall not be performed by a student, supervisor, or volunteer, to the extent that it results in the layoff of the Employee. A position filled by a full-time Employee which becomes open will not be split into two (2) or more part-time positions in order to provide employment for a student.

## ARTICLE II: UNION SECURITY

Section 1.

All Employees on the active payroll as of the effective date of this Agreement, who are members of the Union, will maintain their membership in the Union in good standing as a condition of continued employment.

Section 2.

All Employees hired after the effective date of this Agreement will become members of the Union no later than the sixtieth (60th) day following the beginning of such employment and will thereafter maintain their membership in the Union in good standing as a condition of continued employment.

4

Section 3.

For the purposes of this Article, an Employee will be considered a member of the Union in good standing if he/she tenders his/her periodic dues and initiation fee uniformly required as a condition of membership.

Section 4.

Subject to the Grievance Procedure provision of this Agreement, an Employee who has failed to maintain membership in good standing as required by this Article, will, within twenty (20) calendar days following receipt of a written demand from the Union requesting his/her discharge, be discharged if, during such period, the required dues and initiation fee have not been tendered.

Section 5.

The Union agrees that it will indemnify and hold the Facility harmless from any recovery of damages sustained by reason of any action taken under this Article.

## ARTICLE III: CHECK OFF

Section I.

Upon receipt of a written authorization from an Employee in the form annexed hereto as Exhibit A, the Facility will, pursuant to such authorization, deduct from the wages due such Employee each month, starting not earlier than the first pay period beginning after the completion of the Employee's probationary period, and remit to the Union regular monthly dues as fixed by the Union. The initiation fee will be paid in two (2) consecutive monthly installments, beginning the month following the completion of the probationary period. In the event the Union amends the initiation fee and/or dues schedule, the Facility agrees to make the revised deduction from the Employee's pay, upon thirty (30) days written notice from the Union.

Section 2.

Upon written notice from the Union, Facility agrees to remit said dues and initiation fees to the Philadelphia office of the Union, as designated in said notice.

Section 3.

Employees who do not sign written authorization for deductions must adhere to the same payment procedure by making payments directly to the Union.

5

Section 4.

An Employee who is a member of and adheres to established and traditional tenets or teachings of a bona fide religion, body, or sect which has historically held conscientious objections to joining or financially supporting labor organizations, and who demonstrates such membership and adherence to the Union and the Facility, will not be required to join and remains a member of the Union as a condition of employment.

Section 5.

Such Employee will be required as a condition of continued employment, to remit to the Sickle Cell Anemia Foundation, the Lupus Foundation, the American Cancer Society, or a recognized and valid charity under Section 501(c)(3) of Title 26 of the Internal Revenue Code, monthly a sum equal to the initiation fee and regular dues of the Union, as provided for herein. Such sums will be checked off by the Facility from the Employee's pay at the same time and in the same amount as initiation fees and dues are and will be remitted by the Facility to the charity designated by the Employee from the above list. Such designation will be in the form of a written authorization as Exhibit B annexed hereto and made a part hereof.

Section 6.

If any such Employee who holds conscientious objections request the Union to utilize the grievance/arbitration procedure, as provided for in this Agreement, on the Employee's behalf, the Union is authorized to charge the Employee the reasonable cost of using such procedure.

(a) Such costs will include, but not be limited to, the expense of Union representation at all stages of the grievance procedure, the reasonable and customary fees of the arbitrator and arbitration fees and the fees of the Union's attorney:

(1) The Employee will not have the right, authority, or ability to designate, engage or otherwise hire his/her own attorney to prosecute his/her grievance if arbitration is determined to be appropriate by the Union. Only the Union will have the authority to determine whether a grievance on behalf of such Employee will be taken to arbitration.

(b) If fees are due and owing to the Union under this provision, such fees, if not paid when billed, will be deducted from the Employee's pay in accordance with Exhibit B, attached hereto, and remitted to the Union on a monthly basis and will be completely paid in a period of twelve (12) months from the month of billing; and

(c) Any disputes arising between the Union and the Employee concerning the reasonableness of the costs assessed by the Union will not be subject to the grievance and arbitration procedure of this Agreement.

Section 7.

The Facility will be relieved from making such "check off" deductions upon (a) termination of employment or (b) transfer to a job other than one covered by the bargaining Agreement, or (c) layoff from work, or (d) an agreed leave of absence, or (e) revocation of the check off authorization in accordance with its terms or with applicable law. Notwithstanding the foregoing, upon the return of an Employee to work from any of the foregoing enumerated absences, the Facility will immediately resume the obligation of making said deductions, except that deductions for terminated Employees will be governed by Section 1, 4 and 5 hereof. These provisions however, will not relieve any Employees of the obligations to make the required dues and initiation fee payments pursuant to the Union constitution in order to remain in good standing, except as provided in Sections 4 and 5.

Section 8.

The Facility will not be obliged to make dues deductions or charitable deductions of any kind from any Employee who, during any dues month involved, will have failed to receive sufficient wages to equal the dues deductions or charitable deductions.

Section 9.

Each month, the Facility will remit to the Union, all deductions for dues and initiation fees or deductions for the grievance and arbitration procedure in accordance with Section 6 hereof, made from the wages of Employees for the preceding month, and forward said payment to the Union on or before the 15th day of each month, together with a list of all Employees from whom dues and/or initiation fees and/or grievance and arbitration fees have been deducted and their social security numbers. In addition, each month, the Employee will forward to the Union a list of all Employees from whom charitable contributions have been deducted in accordance with the provisions of Section 6 hereof together with the amount deducted for each Employee.

Section 10.

The Facility agrees to furnish the Union each month with the names of newly hired Employees, including those transferred into bargaining unit positions, including those from non-bargaining unit positions, their addresses, social security numbers, classifications of work, department, and dates of hire; and as well, the names of terminated Employees, including those transferred out of the bargaining unit, together with their dates of termination, and the names of Employees on leave of absence and those returning from leaves of absence. The Facility will also furnish names, prior departments, and classifications of Employees promoted and/or transferred and all pertinent information relating to the change in status of the Employee. The Facility will furnish such additional information as required by the Union to administer this Agreement.

7

Section 11.

Upon receipt of a written authorization from an Employee in the form annexed hereto as Exhibit C, the Facility will, pursuant to such authorization, deduct from the wages due said Employee each pay period, starting not earlier than the first period following the completion of the Employee's probationary period, the sum specified in said authorization and remit same to the District 1199 Credit Union to the credit or account of said Employee. It is understood that such check off and remittance will be made by the Facility wherever feasible.

Section 12.

The Facility agrees to make a payroll deduction once each calendar year from an Employee's pay for the District 1199C Political Action Fund upon the written authorization of any Employee covered under this Agreement, and remit same to the District 1199C Political Action Fund. Said authorization will be in the form annexed hereto as Exhibit D. This deduction will be made only once per year for those Employees in the bargaining unit authorizing the deduction. The Facility will remit the lump sum of all deductions to District 1199C by separate check.

Section 13.

It is specifically agreed that the Facility assumes no obligation, financial or otherwise, arising out of this implementation of the provisions of this Article, and the Union hereby agrees that it will indemnify and hold the Facility harmless from any claims, actions or proceedings by an Employee arising from deductions made by the Facility hereunder. Once the Funds are remitted to the Union, or to the charity of the Employee's designated choice as the case may be, their disposition thereafter will be the sole and exclusive obligation and responsibility of the Union, or the charity as the case may be.

## ARTICLE IV: NO DISCRIMINATION

Neither the Facility, nor the Union will discriminate against or in favor of any Employee because of race, color, creed, national origin, political belief, sex, sexual orientation, age or membership in Union; or any disabled Employee, provided such disability does not interfere with the performance of work responsibilities or duties.

## ARTICLE V: UNION ACTIVITY

Section 1.

A representative of the Union will have reasonable access to the Facility's premises for the purpose of conferring with the Facility, Delegates of the Union and/or with the Employees for the purpose of administering this Agreement; provided, however, that such right of visitation

8

not interfere with the operation of the Facility and the Representative shall notify the Administrator at least twenty-four (24) hours before the planned visit and shall receive permission from the Administrator and/or his or her designee.

Section 2.

The Facility will provide bulletin boards which will be used for the purpose of posting proper Union notices. Such bulletin boards will be placed conspicuously and at places readily accessible to the workers in the course of employment. Such bulletin boards will be enclosed.

Section 3.

A delegate will be provided necessary time off from his/her assigned schedule of work, without loss of pay, while involved in the manner provided in the grievance procedure. The delegate shall advise his/her supervisor of the grievance and request time to make an appointment with the appropriate supervisor at a mutually agreeable time. The delegate will report back to his/her immediate supervisor when his part in the grievance has been completed.

Section 4.

An Employee who loses time from his/her assigned schedule of work while attending health and safety meetings and/or inspections with the Facility will do so without loss of time or pay, provided that such activities take place during their shift.

Section 5.

In the event becomes necessary to investigate, discuss or settle grievances during working hours, the Delegates will first obtain permission from the head of his/her Department, which permission will not be unreasonably withheld, before leaving his/her place of work; the primary concern being whether there is adequate coverage of the resident.

Section 6.

Union Delegates as established by the Union's By-Laws will be granted three (3) days off per year, with pay and without loss of benefits, to attend Union seminars and other Union functions that require Delegate attendance.

## ARTICLE VI: PROBATIONARY EMPLOYEES

Section 1.

Newly hired Employees will be considered probationary for a period of sixty (60) calendar days from the date of hire, excluding time lost for sickness and other leaves of absence. During or at the end of the probationary period, the Facility may discharge any such Employee at

will and such discharge will not be subject to the grievance and arbitration provisions of this Agreement. The Facility will discuss the probationary Employee's performance with him/her prior to such discharge. If such discussion was not held, the Facility will consider extending the probationary period. The probationary period may be extended by the Facility for thirty (30) additional calendar days, upon notice to the Union.

## ARTICLE VII: SENIORITY

Section 1.        Definition

(a)        Bargaining unit seniority is defined as the length of time an Employee has been continuously employed in any capacity by the Facility; and

(b)        Classification seniority will be defined as the length of time an Employee has worked continuously in a specific job classification within a department.

Section 2.        Accrual

(a)        An Employee's seniority will commence after the completion of his/her probationary period and will be retroactive to the date of his/her last hire;

(b)        Bargaining unit seniority and classification seniority will accrue during a continuous authorized leave of absence without pay up to twelve (12) months, or for the period of maternity leave, during an authorized leave of absence with pay, during a period of a continuous layoff not to exceed the lesser of twelve (12) months or the length of an Employee's continuous employment, if the Employee is recalled into employment;

(c)        Classification seniority will accrue during the periods specified in Section (b) above and during the time an Employee works in a specific job classification; and

(d)        Temporary Employees, as defined in Article I, Section 1 (b), will have no seniority during the time they occupy the status of temporary Employee, but should any temporary Employee become a permanent Employee, then seniority will be retroactive to the date of hire, but not more than a sixty (60) days probationary period shall begin.

Section 3.        Loss of Seniority

An Employee's seniority will be lost when he/she:

(a)        Terminates voluntarily;

(b)        Is discharged for just cause;

(c)        Is laid off for a period of twelve (12) consecutive months or a period exceeding the length of the Collective Bargaining Agreement, whichever is less.

10

(d)     Fails to report for work following a recall from layoff or a decision of an arbitrator reinstating an employee who was discharged within five (5) working days after being notified by telegram or mail at the last address in the Employer's records to return to work. The Employer shall also send a copy of the notification to return to work to the Union.

(e)     Fails to return to work following the end of a leave of absence, vacation or sick leave, unless the employee presents an excuse acceptable to the Employer.

(f)     Is employed by another employer during a leave of absence except for military leave.

(g)     Fails to return to work following a disciplinary suspension.

(h)     Falsifies the reason for a leave of absence.

Section 4.     Application

(a)     Bargaining unit seniority will apply in the computation and determination of eligibility for all benefits where length of service is a factor pursuant to this Agreement; and

(b) Classification seniority will apply for scheduling of vacations as herein provided.

Section 5.     Layoff

(a)     In the event of a layoff within a job classification, probationary Employees within that job classification will be laid off first without regard to their individual periods of employment. Non-probationary Employees will be the next to be laid off on the basis of their classification seniority;

(b)     In the event an Employee is scheduled to be laid off in one department and there exists a vacant position or a position filled by a probationary Employee in another department which the Employee has the skills and qualifications to perform, then bargaining unit seniority will prevail in assigning such Employees scheduled to be laid off to such vacant position or positions filled by probationary employees. This provision is not intended to circumvent Section 8 of this Article; and

(c)     Where Layoffs are not limited to one department or job classification, bargaining unit seniority shall apply unless a specific skill is required for a position or job classification.

Section 6     Recall

(a)     Whenever a vacancy occurs in a job classification, Employees who are on layoff in that classification will be recalled in accordance with their classification seniority in the reverse order which they were laid off. If a vacancy occurs in a job classification where no

Employee in that classification has recall rights, then the laid off Employee with the most bargaining unit seniority will be recalled if he/she has the skills and qualifications to do the work and if not, the next senior Employee will be recalled, and so on;

(b)     Probationary Employees who have been laid off have no recall privileges; and

(c)     It is agreed in principle that for the purpose of applying seniority to recalls and to vacant positions, and to layoffs, Employees in job classifications of similar types and requiring similar skills will be grouped together.

<u>Section 7.</u>     Promotion

(a)     Where a promotional vacancy in a bargaining unit job occurs, the Facility will promote the Employee with the greatest seniority provided that the employee has the knowledge, ability, and skills to do the job as determined by the Facility. Disputes under this provision will be subject to the grievance and arbitration provisions of the Contract; and

(b)     An Employee who is promoted will serve the same probationary period on the new job as a new hire. If he/she is removed from the new job during the probationary period, he/she will be returned to his/her former job without loss of seniority or other benefits, excepting that if he/she is discharged his/her rights will be subject to the Article XXIV of this Agreement.

<u>Section 8.</u>     Super Seniority of Delegates

All delegates of the Union will head the bargaining unit, departmental and classification seniority lists for the duration of their terms of office. At the expiration of their terms of office, or removal or resignation, they will return to their regular seniority standing. Such super seniority rights apply only in cases of layoff and recall.

## ARTICLE VIII: WAGES AND MINIMUMS

<u>Section 1.</u>

All wages increases shall be applied across the board on the effective dates as follows:

| May 1, 2016 | May 1, 2017 | May 1, 2018 | May 1, 2019 | May 1, 2020 |
|---|---|---|---|---|
| $500 lump sum payment for full-time employees and $300 lump sum payment for part-time employees in the bargaining unit as of May 1, 2016. | 2% | 2% | 2% | 2% |

12

<u>Section 2.</u>

Minimum and Job rates will be as follows: (Based on a 37.5 hour week)

| | 5/1/2016 (Starting) | (After Probation) | 5/1/2017 | 5/1/2018 | 5/1/2019 | 5/1/2020 |
|---|---|---|---|---|---|---|
| CNA: 0-4 years of documented work experience | 12.00 | 13.00 | 1% | 1% | 2% | 2% |
| CNA: 5 years or more of documented work experience | 12.00 | 13.46 | 1% | 1% | 2% | 2% |
| Recreation Aide | 12.00 | 12.94 | 1% | 1% | 2% | 2% |
| Restorative/ RCNA | 13.00 | 13.98 | 1% | 1% | 2% | 2% |
| Food/Dietary | 10.00 | 11.10 | 1% | 1% | 2% | 2% |
| Housekeeping | 11.00 | 11.91 | 1% | 1% | 2% | 2% |
| Floor Tech | 11.50 | 12.41 | 1% | 1% | 2% | 2% |
| Weekend Only | 13.50 | 14.50 | 1% | 1% | 2% | 2% |
| Medical Supply Unit Clerk, Part-time Aide, Physical Therapy Transporter, Activity Aide | 12.50 | 13.46 | 1% | 1% | 2% | 2% |

All Housekeeping employees shall receive $.50 more per hour while doing the work of a floor technician.

<u>Section 3.</u>

No Employee will be hired below the minimum effective rate for his/her labor grade or classification.

<u>Section 4.</u>

Employees, when required to work at a higher rated bargaining unit job, will be paid their rate of the minimum rate for the higher job, whichever is higher.

3

# ARTICLE IX: HOURS

Section 1.

The regular work week for all full-time Employees will consist of 30 hours per week up to 37.5 hours. The regular work week for part-time Employees will not exceed five (5) days. Employees will receive two (2) days off in each full calendar week except in the event of overtime.

Section 2.

Full-time Employees will be entitled to two (2) rest periods of fifteen (15) minutes each and one (1) thirty (30) minute unpaid meal break in each working day, as assigned by the Facility to each Employee. Employees who work a full half shift will be entitled to one (1) such fifteen (15) minute rest period.

Section 3.

In the event the Facility wishes to change an Employee's starting time, the Employee will be notified in writing of such change two (2) weeks in advance. The provision will not apply to probationary Employees.

Section 4.

No employees will work more than seven (7) consecutive days.

# ARTICLE X: OVERTIME

Section 1.

The Facility will assign, on an equitable basis, "on-call" duty and required prescheduled overtime among qualified Employees. Employees will be required to work overtime when necessary for the proper administration of the Home.

Section 2.

(a)      Employees will be paid one and one-half *(1-1/2)* times their regular rate of pay for all hours worked in excess of eight (8) hours in one day or eighty (80) hours in a pay period ("8 and 80").

Section 3.

There will be no pyramiding of overtime.

14

## ARTICLE XI: SHIFTS

Section 1.

     Employees will work on the shift, shifts or shift arrangements for which they were hired.

Section 2.

     Whenever the Employee requests a change of shift, approval of such request will not be unreasonably withheld if a vacancy exists in the classification in which he/she is then working. If more than one (1) Employee applies, such change will change to the Employee with the most classification seniority qualified to do the work, Notwithstanding the foregoing, Employees will have preference in filling vacancies on another shift in the classification in which he is then working over new hires.

Section 3

     All CNAs and housekeeping employees who are regularly scheduled to work the evening or nighttime shifts will receive a shift differential of thirty cents ($0.30) per hour.

## ARTICLE XII: HOLIDAYS

Section 1.

     Full-time Employees, after their first sixty (60) days of employment, will be entitled to a total of eight (8) paid holidays within each calendar year.

Section 2.

     Eight (8) such holidays specified in Section 1 above will be legal holidays, as specified below:

| | |
|---|---|
| New Year's Day | Norman Rayford Day |
| Martin Luther King's Birthday | Labor Day |
| Memorial Day | Thanksgiving Day |
| July 4 | Christmas Day |

     Employees hired before May 1, 2016, will accrue one (1) personal day with pay every three (3) months. Employees hired after May 1, 2016 will accrue two (2) personal days with pay per calendar year.  Personal days may not be taken until after the first sixty days of employment, but they shall accrue effective with the first day of employment. Personal days will be scheduled

in advance at the Employee's option and with the approval of the Facility. Once scheduled, personal days will not be cancelled except in an emergency.

Section 3.

(a)    Recognizing that the Facility operates every day of the year and that it is not possible for all Employees to be off on the same day. Employees shall be scheduled to work every other holiday and shall alternate Holiday A and B schedules.

(b)    In the event an Employee is not required to work on any of the legal holidays specified herein, he/she will be paid at the rate of time and one half (1½) their regular pay for all hours worked on the holiday and will, in addition, receive an additional day off with regular pay within forty-five (45) days of the holiday.

(c)    If a legal holiday falls on an Employee's regularly scheduled day off, the Employee will receive an additional day's regular pay or a day off with regular pay within thirty (30) days of the holiday;

(d)    If a legal holiday falls during an employee's vacation, at the option of the Facility, the vacation will be extended by one (1) day, or the Employee will receive an extra day's regular pay or a day off with regular pay. In making the determination, the Facility will take into consideration the Employee's expressed preference; and the employee's request will not be unreasonably denied.

(e)    The day on which a holiday is legally celebrated will be the day on which holiday premium pay is paid to those Employees who work on that day.

Section 4.

Regular part-time employees will be paid at time and a half (1.5) for working any contractual holiday.

Section 5.

One personal day each year may be used for any emergency and may be verified by management upon return to work.

## ARTICLE XIII: VACATIONS

Section 1.

Employees will be entitled to accrue vacations each year with pay based on hours worked as follows:

16

(a)   Two (2) weeks after one (1) year of service with RC Operator, LLC; and
(b)   Three (3) weeks after five (5) years of service with RC Operator, LLC; and
(c)   Four (4) weeks after ten (10) years of service with RC Operator, LLC.

## Section 2.

Vacation schedules will be established taking into account the wishes of the Employees and the needs of the Facility. Where there is a conflict in choice of vacation time among Employees, classification seniority will prevail.

## Section 3.

No part of an Employee's scheduled vacation may be charged to sick leave. Vacations will be taken each year and may not be accrued from year-to-year. Employees will not be compensated for vacation time not taken. However, employees shall be allowed to cash in accrued but unused vacation time at 60% of its value at any time.

## Section 4.

Vacation pay will be based upon the Employee's regular pay.

## Section 5.

Upon request, an Employee will be paid his/her vacation pay by separate check before starting his/her vacation, provided that the vacation is for at least five (5) days or more. An employee may request that the Facility defer vacation pay.

## Section 6.

An employee who has quit or resigned with two (2) weeks proper written notice and who has worked out his/her entire two week notice period (unless excused by a bona fide written doctor's note verified by the Employer), and who has not received his/her accrued vacation from work with pay to which he/she is entitled will receive a vacation allowance.

## Section 7.

For part-time Employee, vacation entitlement will be pro-rated based on hours worked.

## Section 8.

Vacation may start any day of the week. Vacation requests will be approved within two (2) weeks, after submission, with thirty (30) days notice. No vacation may be taken between December 20 and January 2.

## ARTICLE XIV: SICK LEAVE

<u>Section 1</u>

Upon completion of a regular full-time Employee's probationary period, he/she will be entitled to be paid sick leave accrued based on actual hours worked at the rate of (1) day for each month of employment, retroactive to date of hire, up to a maximum of twelve (12) days per year. Employees, after one (1) or more years of employment with the Facility, will be entitled to use and anticipate a total of twelve (12) days of sick leave in addition to any accumulated unused sick leave from the prior year, at the beginning of his/her second and each subsequent year of employment, provided that at no time will an Employee be entitled to earn more than twelve (12) days of sick leave during any one (1) year. All regular full-time employees hired after May 1, 2016 shall accrue seven (7) sick days per calendar year based on actual hours worked. In the event an Employee leaves the Facility for any reason whatsoever, the Facility may reimburse itself from the Employee's salary the amount paid for any sick leave which was used, but not actually earned by the Employee at the rate of one (1) day for each month of employment.

<u>Section 2.</u>

An Employee may use sick days to cover time lost from work for visits to the doctor or dentist by the employee or their dependents (spouse or children) provided such time is requested and approved in advance. Approval will not be unreasonably denied. Facility may require a note from the doctor or dentist upon return to work.

<u>Section 3.</u>

Employees will be entitled to accumulate up to a maximum of thirty (30) days of unused sick time. In the month of December each year, employees may cash in up to ten (10) unused accrued sick days at sixty (60) percent of their value.

<u>Section 4.</u>

Employees will not be required to furnish a doctor's certification of illness or injury until absent for three (3) or more consecutive days, except that a doctor's certification will be required for absences on weekends and holidays.

<u>Section 5.</u>    On-the-Job Injury or Sickness

If an Employee is injured or becomes ill during the course of any work day and reports the injury or illness to the Facility; and if, on the orders of a physician, an Employee is kept in the hospital or sent home, said Employee will be paid for the balance of the work day at his/her regular rate of pay.

The Facility will furnish the Union the name of its Worker's Compensation Insurance carrier and policy number upon execution of this Agreement.

## ARTICLE XV: PAID LEAVE

Employees, after their first sixty (60) days of employment will be entitled to paid leave as follows:

### Section 1:    Funeral Leave

Employees will be paid at their regular rate of pay for three (3) working days in the event of the death of a parent, spouse, child, or grandparent; two (2) working days for the death of a sibling (brother or sister); and one (1) work day for their mother and father in law and stepfather. The Employer reserves the right to request appropriate documentation.

### Section 2.    Jury Duty

All Employees who have completed their probationary period and who are called (and did not volunteer) to serve as jurors will receive their regular pay less their pay as juror for each work day while on jury duty, up to a limit of ten (10) days. If the Facility feels that the Employee's work is essential, an excuse from jury duty will be requested. The Facility will aid such Employee in securing release from jury duty.

## ARTICLE XVI: UNPAID LEAVE

Employees will be eligible for unpaid leave in accordance with the following:

### Section 1.    Maternity Leave

Whenever an Employee becomes pregnant, she will furnish the Facility with a certificate from her physician stating the expected date of delivery. Unless medically unable to do so, the Employee will be permitted to continue to work through the term of her pregnancy, or she may leave earlier if her physician and/or the Facility's Employee Health Physician certifies that she is unable to continue working. Leave for maternity should not exceed twelve (12) months after delivery or termination of the pregnancy. An Employee who wishes to return to work must so notify the Facility in writing at the time her maternity leave commences. An Employee will be entitled to return to her former position or to a comparable position.

### Section 2.    Military Leave

Employees will be granted military leaves of absence in accordance with applicable law. In addition, Employees will be granted leaves of absence without pay to attend the National Guard, U.S. Reserve training camps, and other similar involuntary military obligations.

Section 3.      Union Business

A leave of absence for a period not to exceed three (3) years will be granted to Employees with one (1) or more years of bargaining unit seniority in order to accept a full-time position with the Union, provided such leaves will not interfere with the operation of the Home.

Section 4.      Medical Leave

An unpaid medical leave of absence may be granted at the Employer's discretion for a period of up to twelve (12) months. Such leave shall not be unreasonably denied. The Facility has the right to verify the reason for the Employee's absence.

Section 5.      Other Leaves

(a)      An Employee who has been continuously employed for six (6) months or more may request an unpaid leave of absence of up to twelve (12) months by submitting a written request for same and the reasons therefore to the Department Director. The unpaid leave of absence must be approved by the Department Director. Such leave shall not be unreasonably denied. The unpaid leave of absence may be extended for a period of not more than three (3) months and the extension must be in writing;

(b)      While on unpaid leave of absence due to job-related injury of illness, an Employee will be entitled to earn seniority. As a condition of reinstatement following a leave of absence for illness, the Facility may require the Employee to receive the approval of the Facility's Health Service;

(c)      When an Employee returns to work following involuntary leave of absence, he/she will be reinstated to his/her former position with seniority. An Employee who returns to work from a voluntary leave of absence will be reinstated to his/her former job or another position with the same classification with seniority. If the Employee fails to take said opening, he/she will lose both the right to return to said job and his/her seniority, and will only be rehired as a probationary Employee.

Section 6:      FMLA

The Employer agrees to comply with the Family and Medical Leave Act (FMLA) as set forth in the Employer's policies.

## ARTICLE XVII: PAST PRACTICES

<u>Section 1.</u>

Employees will be entitled to free parking as long as same is offered by the Facility.

<u>Section 2.</u>

Employees within the same job classification may trade days off provided they do so within the same pay period with the approval of the supervisor and provided it does not cost the Facility any additional money as overtime.

<u>Section 3.</u>

Employees are required to work every other weekend. Those who have a greater benefit shall continue to keep such benefit.

<u>Section 4.</u>

The Facility shall post monthly employee schedules and an employee shall receive a copy, upon request.

<u>Section 5.</u>

The Facility will continue to provide a Thanksgiving meal for employees working Thanksgiving, desserts and/or snacks for employees working the Christmas holiday, and an employee holiday gathering.

<u>Section 6.</u>

No Past Practice shall be binding upon the Facility unless reduced to writing and agreed to by the Facility and the Union in the Collective Bargaining Agreement.

## ARTICLE XVIII: BARGAINING UNIT WORK

<u>Section 1.</u>

The Facility agrees that supervisors who are excluded from the bargaining unit should not perform bargaining unit work which is solely bargaining unit work, except in the event of a bona-fide emergency.

21

## ARTICLE XIX:  MISCELLANEOUS

Section 1.

      If a holiday falls on pay day, the Employees will be paid the day before.

Section 2.

      Employees will be entitled to an annual uniform allowance of $150.00 per full-time employee and $75.00 for part-time employees per contract year to be given to each employee in a separate check in three (3) equal increments on January 1, May1, and October 1.

Section 3.

      All minor non-resident care related infractions on an Employee's personnel record will be cleared after twelve (12) months provided that the twelve (12) month period is free of said infractions.

Section 4.

      There will be a grace period of seven (7) minutes relating to the docking of Employee's pay. However, this does not necessarily excuse the lateness nor prohibit the Facility from disciplining such Employee.

Section 5.

      The Facility, at its option, will pay for or provide such physical examinations of Employees as it may require.

Section 6.      Job Vacancies And Promotions

      The Facility shall post all job vacancies. When a vacancy in the bargaining unit exists which the Facility decides to fill, the following procedures shall be used in filling such vacancies:

      (a)      The Facility agrees to post a notice of such job vacancies for five days and to consider the qualifications of all applicants for such vacancies.

      (b)      Bargaining unit seniority shall govern where skill, qualifications, and present ability to perform the job are considered to be equal.

22

**Section 7.**

The Facility will not require make-up of weekends due to vacation or the use of three (3) consecutive days of sick leave documented by a physician's note. In the event of a funeral of an immediate family member, defined only as parents, grandparents, sibling, child or current spouse, the employee will not be required to make up one weekend per year, if the employee provides appropriate documentation.

**Section 8.**

The Facility will provide to the Union, and post at the institution, once yearly an updated seniority list.

**Section 9.**      New or Changed Job Classification

(a)      In the event a new classification is established or an existing classification is substantially changed, the Facility will assign it to an existing pay grade in the wage schedule and advise the Union of a proposed rate for the new job;

(b)      The Facility will provide the Union with a written job description of the new or changed classification which will describe the job contents sufficiently to identify the new duties;

(c)      Upon receipt of the job description, the Union will be given an opportunity to meet with the Facility's representatives, if the Union wishes to meet, to discuss the new or changed classification and the assignment of a pay rate. After the meeting and discussing the pay rate with the union, the Facility may thereafter implement the new job at the proposed union wage rate or the Employer will withdraw the new job.

**Section 10.** Inclement Weather or Call In

If an Employee reports to work within two (2) hours of the start of the shift, he/she will be paid for the full shift if it is determined that a good faith effort has been made to get to work on time.

**Section 11.**

On March 1, July 1, and December 1 of each year, employees will receive a report containing the number of their accrued but unused sick, personal, and vacation days.

## ARTICLE XX: HEALTH AND WELFARE

<u>Section 1.</u>

The Employer shall provide health insurance benefits to full-time employees. Employees **hired before May 1, 2016,** shall be responsible for paying for the following percentage of the premium for individual benefits according to the schedule below:

> Prior to May 1, 2017: 15% of the premium for individual benefits
> As of May 1, 2017: 18% of the premium for individual benefits
> As of May 1, 2018: 19% of the premium for individual benefits
> As of May 1, 2019 and thereafter: 20% of the premium for individual benefits

Employees hired after May 1, 2016 shall pay 25% of the premium for individual benefits.

The Employer's premium payment for individual benefits may be used by the employee as partial payment for family or dependent benefits.

<u>Section 2.</u>

The parties agree to meet on an annual basis to discuss issues of mutual concern involving health insurance benefits. In the event the Employer finds comparable coverage at less cost, the Employer reserves the right to switch health insurance plans upon notice to the Union.

If a Taft-Hartley Multi-Employer Health and Welfare Plan is established during the life of this Agreement, the parties agree to meet and discuss the Employer's participation in the Plan.

<u>Section 3.</u>

All full-time employees will be provided term life insurance of $10,000 at no cost to employee.

## ARTICLE XXI: PENSION FUND

<u>Section 1.</u>

Effective October, 2014, the Facility will contribute monthly to the Pension Fund for Nursing Facility and Health Care Employees – Philadelphia and Vicinity a sum of money equal to two percent (2%) of the gross payroll for all Employees covered by this Agreement who have completed their probationary period. Such payment by the Facility to the Pension Fund will be made monthly based upon the previous month's payroll, and shall be due in the Fund office on or before the 30th day of each month. The Facility's monthly contribution shall increase to 2.5% on April 1, 2015 and 3.0% on October 1, 2015.

Section 2.

Such payments will be used by the Trustees of the Pension Fund for the purpose of providing pension and retirement benefits for the Employee within the bargaining unit, as the Trustees of the Fund may from time to time determine.

Section 3.

The Pension Fund will be held and administered under the terms and provisions of the Agreement and Declaration of Trust of the Pension Fund, and any amendments thereof, which provide for equal representation by the Union and the Facilities contributing to said Pension Fund and that any dispute whatsoever that may arise or deadlock that may develop among or between said Trustees shall be submitted to arbitration for, except as may be otherwise provided for in said Agreement and Declaration of Trust, and his/her decision will be binding and final. The Facility hereby adopts and agrees to be bound by the terms and conditions of the Agreement and Declaration of Trust, and any amendments thereof, subject to the terms of the Collective Bargaining Agreement.

Section 4.

An independent audit of the Fund will be made annually and a statement of the results thereof will be furnished to the Facility.

Section 5.

Such Pension Fund at all times will take whatever action is necessary to secure and retain approval of the U.S. Internal Revenue Service as a qualified Pension Fund.

Section 6.

Together with the periodic payments herein provided, the Facility will submit regular monthly reports in such form as may be necessary for the sound and efficient administration of the Pension Fund.

Section 7.

The Facility agrees to make available to the Pension Fund any such records of Employees, such as names, classifications, dates of hires, hours of work, social security numbers, accounts of payroll and/or wages, dates of termination or leave, which the Pension Fund may require in connection with the sound and efficient operation of the Pension Fund or that may be so required by ERISA in order to determine the eligibility of Employees for the Pension Fund benefits and to permit an accountant for the Pension Fund to audit such records.

25

Section 8.

Where contributions are not made when due, the Facility and its successors and assigns shall be obligated from the due date on to pay interest and liquidated damages on all past due contributions in an amount as determined by the Trustees, plus any costs, including legal fees, incurred by the Pension Fund in connection with collection of delinquent contributions and payment for the cost of payroll audits when such audits disclose deficiency of payment.

## ARTICLE XXII: HIRING

It being the desire of the parties to provide for an orderly system of recruitment and placement of workers on jobs in the health care industry, it is therefore agreed:

Section 1.

The Facility will utilize the Union's Employment Service for the recruitment and referral of qualified personnel for Facility bargaining unit job vacancies and training positions, including temporary and part-time positions.

Section 2.

The Facility will notify the Union's Employment Service of all bargaining unit job and training position vacancies and will afford the Service seventy-two (72) hours from the time of notification to refer an applicant for the vacancy before hiring from any other source.

Section 3.

The Employment Service will be administered by the Union and the costs of operating the Service will be borne by the Union.

Section 4.

Notwithstanding the foregoing, the Facility retains the right to hire applicants from other sources in the event that the Employment Service does not refer qualified applicants within said seventy-two (72) hour period.

Section 5.

The Facility will not be required to notify the Employment Services of any job vacancy which must be filled without delay in order to meet an emergency or to safeguard the health, safety, or well-being of patients.

26

Section 6.

No Employee from any source other than the Union's Employment Service nor any student Employee will work in a bargaining unit position without pre-notification by the Facility to the Union.

## ARTICLE XXIII: MANAGEMENT RIGHTS

Section 1.

All management functions and responsibilities, which the Facility has not expressly modified or restricted by a specific provision of this Agreement are retained and vested in the Facility. More specifically, the Facility reserves the right to establish and administer policies and procedures related to resident care, research, training, operations, services and maintenance of the Facility; to reprimand, suspend, discharge or otherwise discipline Employees for just cause; to hire, promote, transfer, layoff and recall Employees to work; to determine the number of Employees and the duties to be performed; to maintain the efficiency of Employees; to establish, expand, reduce, alter, combine, consolidate or abolish any job classification, department, operation or service; to control and regulate the use of facilities, supplies, equipment and other property of the Facility; to determine the number, location and operation of divisions, departments and all other units of the Facility, the assignment of work, the qualifications required and the size and composition of the workforce; to make or change Facility rules, regulations, policies and practices not inconsistent with the terms of this agreement; and otherwise generally to manage the Facility, maintain the full operating efficiency and optimum resident care, and direct the work force, except as expressly modified or restricted by a specific provision of this Agreement.

Section 2.

The management rights set forth above are not all-inclusive, but merely indicate the type of factors or rights which belong to or are inherent in management because of its operational responsibilities. All rights which the Facility had in the past and those which are inherent in the Facility and have not been specifically contracted away by the terms of this agreement are retained solely by the Facility. Management will not exercise its rights to an arbitrary or capricious fashion.

Section 3.

The Union, on behalf of the Employees, agrees to cooperate with the Facility to attain and maintain full efficiency and maximum patient care and the Facility agrees to quarterly labor management meetings in order to receive and consider employee suggestions.

## ARTICLE XXIV: DISCHARGE AND PENALTIES

<u>Section 1.</u>

The Facility will have the right to discharge, suspend or discipline any Employee for just cause.

<u>Section 2.</u>

The Facility will notify the Union in writing of any discharge or suspension within seventy-two (72) hours from the time of discharge or suspension. If the Union desires to contest the discharge or suspension, it should give written notice thereof to the Facility within seven (7) working days, but not later than ten (10) working days from the date of receipt of notice of discharge or suspension. In such event, the dispute will be submitted and determined under the grievance and arbitration procedure hereinafter set forth, however, commencing at STEP 3 of the grievance procedures.

<u>Section 3.</u>

Except for alleged resident abuse or work place violence, when an Employee is ordered to leave his/her work for disciplinary reasons, his/her Delegate will be notified by the Facility, and the Delegate will, without loss of pay, be afforded the opportunity to consult with the Employee for a reasonable period of time at a place provided by the Facility, before the Employee leaves the premises.

<u>Section 4.</u>

All time limits herein specified will be deemed exclusive of Saturdays, Sundays and holidays.

## ARTICLE XXV: NO STRIKE OR LOCK-OUTS

<u>Section 1.</u>

No Employee should engage in any strike, sit-down, sit-in, slow-down, cessation or stoppage or interruption of work, boycott, or other interference with the operations of the Facility.

<u>Section 2.</u>

The Union, its officers, agents, representatives, and members, will not in any way, directly or indirectly, authorize, assist, encourage, participate in or sanction any strike, sit-down, sit-in, slow-down, cessation or stoppage or interruption of work, boycott, or other interference

with the operations of the Facility, or ratify, condone or lend support to any such conduct or action.

Section 3.

In addition to any other liability, remedy or right provided by applicable law or statute, should a strike, sit-down, sit-in, slow-down, cessation or stoppage or interruption of work, boycott or other interference with the operations of the Facility occur, the Union, within twenty-four (24) hours of a request by the Facility, will:

(a) Publicly disavow such action by the Employees;

(b) Advise the Facility in writing that such action by Employees has not been called or sanctioned by the Union;

(c) Notify Employees of its disapproval of such action and instruct such Employees to cease such action and return to work immediately; and

(d) Post notices at Union Bulletin Boards advising that it disapproves such action, and instructing Employees to return to work immediately.

Section 4.

The Facility agrees that it will not lock-out Employees during the term of this Agreement.

## ARTICLE XXVI: GRIEVANCE PROCEDURES

Section 1.

A grievance will be defined as a dispute or complaint arising between the parties hereto under or out of this Agreement or the interpretation, application, performance, termination, or any alleged breach thereof, and should be processed and disposed of in the following manner:

Step1.     Within ten (10) days from the date of the occurrence of the Grievance (except as provided in Article XXIV), an Employee having a grievance and/or the Union Delegate or other representatives will take it up with the immediate supervisor. The Facility will give its answer to the Employee and/or the Union Delegate or other representatives within ten (10) working days after the presentation of the grievance in Step 1.

Step 2.     If the grievance is not settled in Step 1., the grievance may, within five (5) working days after the answer in Step 1., be presented in Step 2. When grievances are presented in Step 2., they will be reduced to writing, signed by the grievant and his/her Union representative and presented to the

29

grievant's department head or his/her designee. A grievance so presented in Step 2. will be answered by the Facility in writing within five (5) working days after its presentation.

Step 3      If the grievance is not settled in Step 2., the grievance may, within five (5) working days after the answer in Step 2., be presented in Step 3. A grievance will be presented in this Step to the personnel director or administrator of the institution, or his/her designee; and that person will render a decision in writing within five (5) working days after the presentation of the grievance in this Step.

Failure on the part of the Facility to answer a grievance at any Step will not be deemed acquiescence thereto, and the Union may proceed to the next Step. Anything herein to the contrary notwithstanding, a grievance concerning a discharge or suspension may be presented initially in Step 3 in the first instance, within the time limit specified in Step 3.

Without waiving its statutory rights, a grievance on behalf of the Facility may be presented initially at Step 3 by notice in writing addressed to the Union at its offices.

Section 2.

All time limits herein specified will be deemed to be exclusive of Saturdays, Sundays and holidays.

Section 3.

A grievance which affects a substantial number or class of Employees and which the Facility's representative designated in Steps 1 and 2 lacks the authority to settle, may initially be presented at Step 3 by the Union representative.

## ARTICLE XXVII: ARBITRATION

Section 1.

A grievance, as defined in Article XXVI, which has not been resolved thereunder may, within thirty (30) working days after the completion of Step 3 of the grievance procedure, be referred for arbitration by the Facility or by the Union to an Arbitrator selected in accordance with the procedures of the American Arbitration Association (hereinafter called "AAA"). The arbitration will be conducted under the Voluntary Labor Arbitration Rules then prevailing of the AAA.

Section 2. Expedited Arbitration Procedure for Discharge Cases

The parties agree that discharge cases may be handled under the expedited arbitration procedures of the American Arbitration Association in accordance with the following procedure:

(a)     Within seven (7) calendar days after receipt of the Facility's Step 3 grievance procedure answer, the Union may request expedited arbitration in a discharge case only by utilizing the following procedure:

    1.     The Union will initially notify the Facility's Administrator by telephone that it desires to proceed to arbitration in a particular case. Within forty eight (48) hours of such notification, the parties will agree on a hearing date that falls within thirty (30) calendar days of such notification by the Union.

    2.     The Union will then confirm in writing to the Facility's Administrator or his/her designee that it is proceeding to submit the discharge case grievance to the AAA and will set forth the agreed-upon hearing date.

    3.     The Union will notify the AAA which will submit to the parties a list of Arbitrators who are available to hear the case on the agreed-upon hearing date

(b)     The Arbitrator will issue a written opinion within thirty (30) days of the close of the hearing; and

(c)     All other rules and procedures of the regular arbitration procedure will be applicable to the expedited procedure.

Section 3.

The fees and expenses of the AAA and the Arbitrator will be borne equally by the parties.

Section 4.

The award of an Arbitrator hereunder will be final, conclusive, and binding upon the Facility, the Union and the Employees.

Section 5.

The Arbitrator will have jurisdiction only over disputes arising out of grievances, as defined in Article XXVI, and he/she will have no power to add to, subtract from, or modify in any way any of the terms of this Agreement.

Section 6.

In cases alleging resident abuse, the Arbitrator shall draw no inference of any kind from the failure of the resident to appear and testify. The Arbitrator shall hear the grievance and determine if the Employer had reasonable cause to believe resident abuse occurred as defined by the Employer's rules and regulations concerning resident abuse.

## ARTICLE XXVIII: HEALTH AND SAFETY

Section 1.

There will be established a Health and Safety Committee made up of equal representation of Union and Facility representatives.

Section 2.

The Facility will provide, to the best of its ability, each Employee with a safe and healthy workplace, which will be free from recognized hazards.

Section 3.

The Facility will inform Employees coming into contact with known hazardous conditions or toxic substances in the course of performing assigned duties as to the nature of the hazards and what measures, including personal protective equipment, are to be followed to avoid exposure.

Section 4.

The Facility will provide such medical services and tests as may be needed for assessment of possible exposure to hazards and toxic substances at no cost to the Employee. The Facility agrees to provide each Employee's physician, upon written request by the physician, with a complete report of the results of any tests or examinations given to him.

Section 5.

Recommendations from the Health and Safety Committee will be taken into consideration in the formulation and administration of Facility's health and safety policies and procedures.

## ARTICLE XXIX: SEPARABILITY

It is understood and agreed that all Agreements herein are subject to all applicable laws now or hereafter in effect, and to the lawful regulations, rulings and orders of regulatory commissions or agencies having jurisdiction. If any provision of this Agreement is in contradiction of the laws or regulations of the United States or the State of Pennsylvania, such

32

provision will be superseded by the appropriate provision of such law or regulation, so long as same is in force and effect, but all other provisions of the Agreement will continue in full force and effect.

## ARTICLE XXX: DURATION OF AGREEMENT

This Agreement will be in full force and effect for a five year period commencing upon Ratification and ending April 30, 2021. The Parties agree to make best efforts to renew this Agreement beginning the ninetieth (90th) day preceding the termination date of this Agreement.

IN WITNESS WHEREOF, the Union and the Facility have executed this Agreement this _____ day of _____, 2016.

Henry Nicholas, President
National Union of Hospital and Health
Care Employees, AFSCME, AFL-CIO,
and its affiliate, District 1199C

RC Operator, LLC
d/b/a Willow Terrace

**EXHIBIT A**
**DUES CHECK-OFF**

## EXHIBIT B
## CONSCIENTIOUS OBJECTOR
## CHECK-OFF AUTHORIZATION

DATE: _____ TO: _____

You are hereby authorized and directed to deduct a sum equal to the initiation fee required by District 1199C, National Union of Hospital and Health Care Employees as a condition of membership and in addition thereto, deduct each month a sum equal to the monthly membership dues required by said Union, and to remit all such deductions so made to the following charity:

_____

This contribution will be deducted from my pay and remitted to the charity no later than the tenth (10th) day of each month immediately following the date of deduction or following the date provided in the Collective Bargaining Agreement for such deduction. This authorization will be irrevocable for a period of one (1) year or until the termination date of the Collective Bargaining Agreement, whichever is sooner, and will, however, renew itself from year to year unless the Employee gives written notice addressed to the Facility at the following address:

_____

at least fifteen (15) days prior to any termination date of the revocation of this authorization. At the same time, notice must be given to the Union at the address of 1319 Locust Street, Philadelphia, Pennsylvania 19107, of such termination, at least fifteen (15) days prior to any termination date of the revocation of this authorization.

Name _____

Social Security Number _____

Clock Number _____

Department _____

Signature _____

Address - _____

**EXHIBIT C**
**CREDIT UNION CHECK-OFF**

**DISTRICT 1199C CREDIT UNION**

PLEASE PRINT

NAME _____ SEC. NO. _____

ADDRESS _____ PHONE _____ __

CITY/STATE. _____ ZIPCODE _____

EMPLOYED AT _____

DEPARTMENT _____ JOBTITLE _____

AMOUNT OF DEDUCTION _____ PER PAY PERIOD

SIGNED _____ __

Credit Union Check-Off Authorization
Effective Date -------

TO:_____
   (Name of Facility)

You are hereby authorized and directed to deduct from my wages or salary the sum of $ __ each pay period not to exceed ten percent (10%) of my wages of each pay period and to remit such deductions to the District 1199C Credit Union, or to any other credit union in which the Hospital participates (if I so designate), no later than the tenth (10th) day of each month following the month in which the deductions are made. This authorization may be revoked by a 30 day written notice sent to the District 1199C Credit Union, unless this authorization is executed as security for or as a manner or method of the repayment of a loan from the District 1199C Credit Union doing business in New York and in such latter event the same will be in full force and in effect until the loan from the District 1199C Credit Union has been paid in full.

Name _____ Address _____ (Print)
Signature _____ ~
Social Security Number _____ Job Title _____ _

36

**EXHIBIT D**
**POLITICAL ACTION CHECK-OFF**

Louis J. Capozzi, Jr., Esquire*
Daniel K. Nathboff, Esquire
Donald R. Reavey, Esquire
Craig I. Adler, Esquire**
Andrew R. Eisemann, Esquire
Glenn A. Parno, Esquire**
Bruce G. Baron, Esquire
Brandon S. Williams, Esquire
Nicholas J. Luciano, Esquire
Joseph J. Gentile, Esquire***
Timothy Ziegler, Sr. Reimb. Analyst
Erin E. Anthony, Reimb. Analyst
Karen L. Fisher, Paralegal
Linda Gussler, Paralegal
Kelly A. Birdsall, Paralegal
*(Licensed in PA, NJ and MD)
**(Licensed in PA and NJ)
***(Licensed in PA, NJ and CA)



## Capozzi-Adler, P.C.
*Attorneys at Law*

1200 Camp Hill Bypass
Camp Hill, PA 17011

*Mailing Address:* P.O. Box 5866
Harrisburg, PA 17110

Telephone: (717) 233-4101
Facsimile: (717) 233-4103
www.capozziadler.com

Mid-Penn Abstract Company
Charter Settlement Company
Telephone: (717) 234-3289
Facsimile: (717) 234-1670

Jeffrey Austin
Administrative Organizer
National Union of Hospital and Health Care
  Employees AFSCME AFL-CIO, and its affiliate, District 1199c

Re:    CBA Side Letter
           Our Matter No. 113-13

Dear Jeffrey:

      This document constitutes the Side Letter attached to the Collective Bargaining Agreement at Willow Terrace with an effective date of May 1, 2016. The Side Letter is as follows:

1. President's Day shall not be considered a contractual holiday.

2. Employees Woodard and Foster, both in Dietary, shall receive an additional twenty cents ($0.20) per hour in addition to their across-the-board increases.

3. In accordance with Article V, Section 6, the Employer will pay the following Union delegates for time spent in negotiations:

      a.  Sheila (3 days)

      b.  Rochelle (4 days)

      c.  Daniel (4 days)

      d.  Dana (3 days)

      e.  Sybil (4 days)

If you have any questions regarding this Side Letter, please contact me immediately.

Best regards,

Louis J. Capozzi Jr.

EXHIBIT 2

## JUDGMENT NOTE ("NOTE")

$36,009.27
PRINCIPAL AMOUNT OF NOTE

January 10, 2018
DATE

FOR VALUE RECEIVED, WILLOW TERRACE NURSING AND REHABILITATION CENTER ("Company"),  promises to pay to the order of the PENSION FUND FOR NURSING HOME AND HEALTH CARE EMPLOYEES, PHILADELPHIA AND VICINITY, ("Fund") or holder, upon demand, the sum of Thirty-Six Thousand Nine Dollars and Twenty-Seven Cents ($36,009.27) plus interest at the rate of four percent ( 4%) per annum compounded daily in twelve (12) consecutive monthly installment payments of Three Thousand Eighty-Seven Dollars and No Cents ($3,087.00) as reflected in the chart below.  First payment to be made on February 1, 2018.  Subsequent payments to on the 1st of the month for every month thereafter to January 1, 2019.   Interest shall accrue from November 1, 2017.

| Payment Number | Date | Payment Amount |
|---|---|---|
| 1 | 2/1/18 | $3,087.00 |
| 2 | 3/1/18 | $3,087.00 |
| 3 | 4/1/18 | $3,087.00 |
| 4 | 5/1/18 | $3,087.00 |
| 5 | 6/1/18 | $3,087.00 |
| 6 | 7/1/18 | $3,087.00 |
| 7 | 8/1/18 | $3,087.00 |
| 8 | 9/1/18 | $3,087.00 |
| 9 | 10/1/18 | $3,087.00 |
| 10 | 11/1/18 | $3,087.00 |
| 11 | 12/1/18 | $3,087.00 |
| 12 | 1/1/19 | $3,087.00 |

The actual total owed the Funds is $36,009.27.  However, the Fund conditionally waived $7,201.85 of the outstanding liquidated damages owed upon payment of the Principal Amount in accordance with the Note.  However, if the Company defaults on the Note, the $7,201.85 will be due and owing along with the balance of the Note.

**Late Charge.**  If any installment under this Note is not paid within ten (10) days after the installment is due, the Company shall be obligated to pay the holder a late charge of One Hundred Dollars ($100.00).  This charge shall be in addition to any other remedy available to the holder pursuant to the terms of this Note.

**Acceleration.**  On non-payment of any installment when due, the failure of the Company to submit remittance reports as required by the collective bargaining agreement with District 1199C to which the Company is bound, or the failure to promptly and fully remit all contributions becoming due after the date of this Note to the Fund as required by a collective bargaining agreement with District 1199C to which the Company is bound , all remaining installments plus accrued interest and all of the unpaid contributions, interest on contributions and liquidated damages as provided by 29 U.S.C. §1132(g)(2) and collective bargaining agreement shall, at the option of the holder, become immediately due and payable.  In addition the $7,201.85 in liquidated damages will be due upon default of this Note.

**Fees.**  If this Note is placed in the hands of an attorney for collection, Company agrees to pay attorneys' fees equal to the greater of $500.00 or twenty percent (20%) of the amount due and owing on the defaulted Note, including accrued interest, and the unpaid contributions, interest on contributions and liquidated damages.

**Confession of Judgment.**  To secure the payment of this Note, the Company  irrevocably authorizes the Prothonotary, Clerk of Court, or any attorney of any court of record to appear for them in any Court of record in term time, or vacation at any time before or after maturity and confess a judgment without process in favor of any holder of this Note, with or without the filing

of an averment or declaration of default, for such amount as may appear to be unpaid thereon, together with charges, costs, attorneys' fees and interest, as above provided. The Company waives and releases all errors which may intervene in any such proceedings and waive all right to appeal in equity, by statute or under common law. The Company consents to immediate execution upon the judgment hereby ratifying and confirming all that may be done under the powers granted in this Note, waiving and releasing benefit of all appraisement, inquisition of real estate, stay of execution and all rights under the exemption laws of any state and/or the bankruptcy laws of the United States, as in effect now or in the future and voluntarily condemn all of its real estate upon judgment and authorize the entry of such condemnation upon any writ issue.

<br>

WILLOW TERRACE NURSING AND
REHABILITATION CENTER

WITNESS:

_____          By:   _____

Subscribed and Sworn before me
this ___ day of January, 2018

_____
NOTARY PUBLIC

## <u>WARRANT OF ATTORNEY TO CONFESS JUDGMENT</u>

<u>January 10, 2018</u>
DATE

Willow Terrace Nursing and Rehabilitation Center ("Company"), by its officer and duly-authorized agent, intending to be legally bound have executed a Judgment Note ("Note") for the benefit of the Pension Fund for Nursing Home and Health Care Employees, Philadelphia and Vicinity, ("Fund") on this date. Company authorizes the holder to confess judgment on the Note at any time against it and, in order to carry out this provision, authorize any attorney of the States of Pennsylvania, New Jersey or elsewhere, to appear for it in any competent court and confess judgment against it, in favor of the holder of the Note, for the full amount of its liability under the Note, including attorneys' fees equal to the greater of $500.00 or twenty percent (20%) of the amount due and owing on the Note at the time judgment is confessed and applicable costs and interest.

Company agrees that a judgment may be entered against it, upon the filing of an affidavit to which is attached a copy of this Warrant and the Note alleging the amounts then due to the Fund or Holder.

WITNESS:

WILLOW TERRACE NURSING AND
REHABILITATION CENTER

_____     By: _____

Subscribed and Sworn before me
this ___ day of January, 2018

_____
NOTARY PUBLIC

EXHIBIT 3



**Reading Eagle: Drew Geary** | The Exeter Greens Care and Rehabilitation Center in Exeter Township.
**Share**
**Adjust font size:** A A A



**Nicole C. Brambila** | Reporter
610-371-5044
Nicole Brambila is an investigative journalist for the Reading Eagle.

**Follow Nicole C.**
Wednesday May 2, 2018 11:56 PM

# Pennsylvania takes control of nine nursing homes, including one in Berks County

The Department of Health has installed temporary management of Exeter Greens Care and Rehabilitation Center.

**WRITTEN BY NICOLE C. BRAMBILA**

EXETER TOWNSHIP, PA —

The Pennsylvania Department of Health installed temporary management of nine Skyline Healthcare nursing homes, including one in Berks County.

The move announced Wednesday by the Wolf administration affects the 124-bed Exeter Greens Care and Rehabilitation Center in Exeter Township.

"We are taking this action to ensure residents have continuity of care and their needs are met," Dr. Rachel Levine, state secretary of health said in a written statement. "Ensuring that Pennsylvania nursing home operators provide safe care to residents is a top priority of the department."

The move follows similar actions taken by state officials in Nebraska, Kansas and South Dakota over concerns that the New Jersey-based company's finances may put residents at risk.

Nate Ward, health department press secretary, did not respond to a Reading Eagle inquiry about who has or will assume management of the homes or when.

Juda S. Engelmayer, a Skyline spokesman, said in a statement that patients remain an "utmost priority" as the company transitions out of the nursing home and managed care business.

The following are the other facilities affected:

- Doylestown Care and Rehabilitation Center, Doylestown, Bucks County.
- Lancaster Care and Rehabilitation Center, Lancaster, Lancaster County.
- Lansdale Care and Rehabilitation Center, Lansdale, Montgomery County.
- Phoenixville Care and Rehabilitation Center, Phoenixville, Chester County.
- Rosemont Care and Rehabilitation Center, Rosemont, Delaware County.
- Stenton Care and Rehabilitation Center, Philadelphia.
- Willow Terrace, Philadelphia.
- Wyndmoor Hills Health Care and Rehabilitation Center, Wyndmoor, Montgomery County.

The latest federal data show these Skyline facilities have a combined 1,053 beds and serve an average of 814 residents a day.

Skyline acquired seven of the facilities — including the Exeter property — in February 2017 when Golden LivingCenter divested its operating interest in all its Pennsylvania homes.

The quality of care and regulatory oversight has been a concern in Pennsylvania since the attorney general's office in 2015 filed a lawsuit against two-thirds of Golden Living's nursing homes.

Neither Golden Living nor Skyline officials have given a reason for their exit from the managed care industry, but leaders point to shrinking state contributions to Medicaid.

W. Russell McDaid, president and CEO of the Pennsylvania Health Care Association, an advocacy group that represents 500 members, said in a written statement

Wednesday that the daily shortfall in Pennsylvania ranges from $34 to more than $100 per resident.

"Daily shortfalls of this magnitude are unsustainable and will continue to erode the quality of and access to care in Pennsylvania's nursing facilities rapidly without increases in Medicaid funding," McDaid said.

"We are beginning to see that safety net erode with more than 100 nursing facilities in Pennsylvania having declared bankruptcy, been put into receivership, changed ownership or undergone a reorganization."